The next case on the calendar is Dotson v. Syracuse. May it please the court. Sonia Dotson has been before this court before on another appeal. The principal argument that we have is that the claims were sufficiently pled and erroneously dismissed at the dismissal stage by the district court, in particular a municipal custom policy and practice of discrimination and retaliation against women officers in the Syracuse Police Department. Secondly, we allege that the allegations of pornography that were selectively stricken by the district court was done so unlawfully and without basis because there was no showing of prejudice, nor was there any res judicata or collateral estoppel effective as to those claims as background evidence as to the retaliation that Sonia Dotson continued to suffer until she ultimately was terminated by the Syracuse Police Department. Third, the summary judgment decision by Judge Mordew improperly ignored the evidence of disparate treatment, the evidence of discrimination, and the evidence that presented issues of fact as to whether or not she was treated differently as a result of her gender and her race. If you take a look at the record with respect to what was presented by the plaintiff and not considered by the district court, the record's falsification by another officer at record at 3188 through 3197 references counseling for an offense that was done by a white male that exceeded anything that Sonia Dotson had done. Additionally, failure to follow directions resulted in a written reprimand. However, when my client was ordered to sit down, quote, like a dog, close quote, as observed by Kimberly Calvarez, she was charged with insubordination and given a five-day written suspension. Additionally, even when the investigation reflects the word insubordination by the officer, the officer is then charged with not insubordination, but lack of courtesy or not acting properly. Sergeant Kleist allegedly said, don't hire any more females. He was having too much trouble with them. And I think the record reflects in our brief records the derogatory terms that were used by the supervisors of Ms. Dotson with both respect to race and gender, evincing a bias and a discriminatory intent which was not considered by the district court. As Mr. Barrett said, in accordance with the Syracuse Police Department, insubordination is in the eye of the beholder. He said that at the record at 1063 at deposition. When it is in the eye of the beholder and the Syracuse Police Department has been put on notice repeatedly that they have this custom policy and practice and yet they have done nothing to correct that. You lost on the custom policy and practice the first time around in Dotson 1 and you didn't appeal that. You didn't raise that on appeal in Dotson 1. What in your complaint alleges new facts post your loss in Dotson 1? I mean you won on other things in Dotson 1 and ultimately persevered in your jury verdict after you retried it again. But in Dotson 1 you lost the Manel claim, didn't appeal it, so you're precluded on that. With regard to a Manel claim that occurred in Dotson 1, so you might be able to raise a Manel claim based on allegations of fact post Dotson 1 but your complaint doesn't contain any. The complaint does contain complaints post Dotson 1. Her complaint was filed in 2004 or 2006. The allegations in the complaint and the second amended complaint in this action involved discriminatory conduct that occurred in 2007, 2009, 2010. But that's not enough to make out a Manel claim. A Manel claim has to go beyond that and have to show a pattern or practice that's been recognized. The fact that you lost just a couple doesn't mean that you've made new allegations to a Manel claim but it's crystal clear that you're precluded on the Manel claim, notwithstanding the verdict and your other offer that for some reason you think the district court judge was wrong as a matter of law on the facts earlier on doesn't matter. You didn't appeal that. You didn't win on it. It's foreclosed. As Judge Friendly even said, even wrong decisions are precluded by res judicata. The custom policy and practice allegation that was brought in the first Dotson 1 involved the fact that pornography was indulged and allowed at the Syracuse Police Department. Along with other allegations. The new allegations include being disparately disciplined, being subjected to disparaging statements, descriptive terms about her gender, about her race, and being placed under the supervision of individuals who are reviewing her computer usage. Not other people. And that is in retaliation for that original complaint. Say they're pervasive enough that that then makes a prima facie case on a Manel claim. Correct. And the evidence of the Lee verdict is also evidence of that custom policy. It just doesn't do you any good. You either have an allegation or you don't have an allegation. Is the Lee allegation in the complaint? The reference to the Lee verdict as evidence, yes. Can you address the retaliation claims? As I understand your argument, one of the arguments you make is that the district court erred in dismissing the retaliation claim in connection with the February 2012 suspension because there was temporal proximity. Is that your argument? I believe so. I think you're talking about the one where Kim Calvary, or is this the one where she submitted the motion to amend her complaint and that discipline closely followed. There was ongoing proceedings that the discipline closely followed. So that retaliation, he only looked at saying, well, you're looking at the 2003 complaint of pornography and alleging retaliation in 2008 or 2010. And then he failed to look at the ongoing proceedings both in district court, because we had to retry that case again in November of 2011. And so then that 2012 discipline that closely followed Ms. Calvary's return to work from her EEOC complaint where her desk was moved and so forth, we feel that that was overlooked. And I think this court's decision in two decisions I just would like to make reference to is Vasquez v. Ambulance, which reflects to the cat's paw theory about the co-worker and the co-worker's intent being imputed to the employer because they knew or should have known of that discriminatory bias based upon the history of these individuals. The plausible pleading of the retaliatory intent as identified in Vasquez was the co-worker knew or desired actions to result in adverse employment actions. The testimony by Kleist, by Trudell, by Barrett, and by McGill, all evidence that they knew what was going on and they went ahead to do that. The other case that I would draw the reference to is the Walsh v. New York City Housing Authority case from July and, Your Honor, Your Honor's dissent in that notwithstanding, I believe that the applicable provisions of that brick in the wall is exactly what was happening and continues to happen in cases such as this. Thank you, Your Honor. Yes, Your Honor. No, these were decided since our brief, Your Honor. Walsh v. New York City Housing Authority is 14-181-CV, was July 7th of 2016. Vasquez v. Empress Ambulance was August 29th of 2016, 15-3239-CV, specifically referenced earlier footnote four. Thank you. Good morning, Your Honors. I'll spare you the full recitation of our papers. I'd just like to highlight a couple of issues that the appellant raises. Notably, with respect to her discriminatory or different treatment allegation, the key factor that the appellant keeps overlooking here is that the comparators with whom she seeks to compare herself are not CSOs. They're not community service officers. They're actual police officers. Those individuals are governed by a separate labor agreement, a separate disciplinary policy, and they're in an entirely different bargaining unit that has a whole separate group of rights, responsibilities, and job duties. How many CSOs, if it's in the record, are there in the Syracuse Police Department? I don't believe it's in the record, Your Honor, and it's actually dwindling because it's a position that is slowly being phased out as members retire and are not being replaced. Additionally, with respect to your questions, Judge Wesley, I believe they're exactly on point. The appellant here in her Second Amendment complaint, she seeks to state that there was a couple few incidents along the way that may have happened post-Dotson 1. But she doesn't actually allege anything that's a custom policy or practice. She tries to recycle a pornography in the workplace allegation that was Dotson 1 and was actually litigated exhaustively, as the district court noted, in Dotson 1. She seeks to point out, to use this allegation that she helped a police officer, again, who's not similarly situated as her because she's a police officer, Kim Calvary's, with regard to an EEOC complaint that Ms. Calvary's filed. But the support that she alleges and the encouragement that she alleges she gave Ms. Calvary's is not anything to do with the EEOC complaint. She notes that she went out to lunch with her, that she offered her advice on child support, that she provided moral support during a difficult period that she was having with a personal relationship with another officer. But she doesn't say, I testified at a hearing. She doesn't say, I submitted an affidavit. She doesn't do anything which would actually be recognized as support within the EEOC proceeding for which she could be retaliated against. Again, just to reiterate my earlier point, the issue of the insubordination disciplines, which are the primary issues here in terms of the discipline against Ms. Dotson. The individuals with whom she says were also insubordinate, in one instance a police officer didn't give full effort during a training drill. Again, she overlooks the fact that all the instances she cites, these are police officers. Their job duties are inherently very different from a CSO and their responsibilities are very different and their disciplinary methods and means are very different because they belong to a separate bargaining unit and governed by a separate bargaining contract. Additionally, I'd wish to note, as we know in our brief, Ms. Dotson was asked at her deposition, well, what facts do you have to provide? And she responded in the lines of, well, the facts are what I believe they are. And as the district court properly notes in its decision, mere speculation or conjecture is not enough to survive a motion to dismiss and a motion for summary judgment, especially a motion for summary judgment after she's had full discovery in the matter and the best she can provide in terms of why it is that she believes that the police department allegedly conspired with the district attorney's office to appeal a dismissal on speedy trial grounds. In connection with the alleged 2009 incident. At J.C. Penney's, right. And if I understand the record, there's no evidence that the ADA was in communication with the SPD at the time the appeal was perfected. Correct. And he was deposed in the matter. First assistant district attorney Rick and day to day ADA who runs the office indicated I never spoke to him about it. That would have been handled by our appeals unit. There would have been two attorneys in the appeals unit who would have made that decision. And the decision was made because the office has a policy against speedy trial dismissals where they think they're right on the law. And that claim was taken care of, the retaliation aspect of it at summary judgment. But do you mind addressing the 2012 suspension, which was dismissed at the motion to dismiss stage, the retaliation claim, if I understand that correctly. And in reading the briefs carefully, I believe her claim is that there was temporal proximity because she had just reached the end, reached a verdict in the ongoing litigation at around the same time as this alleged retaliation occurred. So why isn't that enough at the pleading stage? Temporal proxy alone can be in certain circumstances evidence of retaliation. But in this case, the testimony that was uncontroverted in the depositions indicated that during a meeting in which she was required to attend as part of her job duties, her superior, Captain Trudell, told her to stop playing with her cell phone or something along those lines. And she became what was described across the board as irate, began yelling at him. He indicated this wasn't appropriate conduct for that meeting and to go into a private office where they could discuss it. She continued to berate him and continue saying you can't speak to me that way, you can't tell me what to do. There's no dispute that I see in the record that that conduct took place. So whether it took place within three months or five months of the award in Dotson 1, on retrial, it should be irrelevant to this matter because it's clearly independently supported by her own testimony, which she indicated she became agitated and made statements that were inarguably insubordinate to a superior officer. And two, it was across the board described during depositions as her superior didn't have to witness this argument that was beginning or brewing. So I think when you look at it in light of those other factors, Your Honor, there's clearly independent support for that discipline. And the other factor I just would point out in closing here very briefly is that she could have been disciplined much more severely than she actually was. She was given a five-day suspension. But for insubordination, she could have been terminated. And in fact, I believe it was on the first insubordination, the 2008 insubordination, the original recommendation was termination, which was ultimately lowered by the, I don't believe it was Captain, excuse me, Chief Barrett, but one of the actual captain or the deputy chief who decided the actual discipline actually lowered it from a termination to a five-day suspension, which is clearly in the record, Your Honor. Thank you. The recommendation of termination is exactly evidence of the retaliation and the discrimination. Mr. Sweeney recommended termination. The arbitrator in the matter that went to arbitration regarding the insubordination, the arbitrator found at the record at page 3031 that Ms. Dotson was not insubordinate. Now, for counsel to state that there is no dispute that that conduct took place exactly points to the fact that it is an issue of fact. She says it didn't take place. Additionally, when you look at Where does she say that? In her deposition? She says that in her deposition and her affirmation in opposition to summary judgment. And then if you look at, for them to say, well, the police officers are different than the CSOs when the record shows that sergeants, police sergeants are in charge of CSOs. You've got a SERP officer, a student resource officer, Kluge, referred to female student as a bitch. He got counseling. They were still listening to her phone calls. A3147. Kluge, disobeying a direct order at A3146, he got a one day furlough at 3143 for yelling at Sonia. He was quoted as saying broads can't work together and effing broad. A3137 through 3138. Libitor was disciplined for sending a photo of his genitals to a woman who didn't want them. He got a one day furlough and a written reprimand. Ms. Holmes, the victim in that case, in that investigation, said she didn't want to talk about it because she was fearful of retaliation in the form of discipline. Ms. Eggers, an officer, she was found to be insubordinate by using disrespectful language against a supervisor who she accused of being continually disrespectful and hostile to her in light of her